UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| GILBERT SUDBECK and LYNN SUDBECK, husband and wife, | ) ) ) | |
| Plaintiffs, | ) ) | 2:04-cv-1535 JWS |
| vs. | ) ) | PRELIMINARY ORDER |
| SUNSTONE HOTEL PROPERTIES, INC.; SUNSTONE HOTEL INVESTORS, LLC; SUNSTONE HOTEL INVESTORS, L.P.; SMP II LIMITED PARTNERSHIP; JEFFERY HAMMERMEISTER and JANE DOE HAMMERMEISTER, husband and wife DIVERSIFIED ENGINEERING, INC; JOHN AND JANE DOE I-X, husbands and wives; BLACK CORPORATIONS I-X; and WHITE PARTNERSHIPS I-X, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | [Re:   Motions at dockets 56, 58, 59, 60, 61, 62, 63, 64, 73, & 77] |
| Defendants. | ) ) ) | |

## I.  NATURE OF THIS ORDER

This is a preliminary order which sets out the court's preliminary analysis of the motions described in the next section.  This order does **not** decide any of those motions.  Rather, it provides the parties with the court's current view in the hope that doing so will assist them to focus their presentations during oral argument.  This order does **not** authorize the filing of any more briefing on any motion.  After the court hears oral argument (which will be scheduled in a separate order), it may adopt all, some or none of this preliminary order when it decides the motions.

## II.  MOTIONS BEFORE THE COURT

At docket 56, defendants Sunstone Hotel Properties, Inc., Sunstone Hotel Investors, LLC, Sunstone Investors L.P., SMP II Limited Partnership, and Jeffrey and Jane Doe Hammermeister (collectively "Sunstone") moved for summary judgment on the issue of liability.  At docket 73 plaintiffs Gilbert and Lynn Sudbeck (collectively "Sudbeck") opposed the Sunstone motion and cross-moved for summary judgment on the issues of causation and damages.

Sunstone filed numerous motions *in limine:*  At docket 58, it seeks to exclude the testimony of Matthew Freije; at docket 59, it asks the court to exclude evidence of subsequent remedial measures; at docket 60, Sunstone seeks to exclude the evidence of water testing; at docket 61, it requests exclusion of evidence relating to OSHA regulations; at docket 62, it seeks to exclude evidence of insurance or medical liens; at docket 63, it asks the court to exclude evidence of future medical expenses; and finally at docket 64, Sunstone asks for exclusion of evidence relating to defendants' financial condition.  At docket 77, Sunstone moved to strike portions of Sudbeck's Statement of Facts.  All motions are opposed and have been briefed.

The parties requested oral argument on some of the motions.  In a separate order, the court will schedule telephonic oral argument on the motions at dockets 56 and 73, with permission to touch upon any of the other motions addressed in this preliminary order if counsel deem that to be necessary.

## III.  BACKGROUND

This lawsuit was commenced in the Arizona Superior Court, Maricopa County.  It was removed to this court pursuant to 28 U.S.C. § 1441(a).  There is complete diversity between the parties, and the amount in controversy exceeds $75,000, so this court has diversity jurisdiction under 28 U.S.C. § 1332(a).

The material facts are not in dispute.[1]  On June 24, 2002, Mr. Sudbeck, a resident of Pierre, South Dakota, checked in as a guest at the Sheraton San Marcos

---

[1] Except where otherwise specifically indicated, references to a party's statement of fact is to a fact that has been specifically admitted or stands without being controverted.

Golf Resort and Conference Center ("San Marcos Resort") in Chandler, Arizona.[2]  He checked out of the hotel on June 27, 2002, and returned to South Dakota.[3]  On July 3, 2002, Mr. Sudbeck drove to the Minneapolis Metropolitan Area to visit his son.[4]  While in Minnesota, Mr. Sudbeck stayed at a Clarion Inn in Bloomington, Minnesota.[5]  On July 5, 2002, Mr. Sudbeck drove to his home in South Dakota.[6]  While returning to South Dakota on July 5, 2002, Mr. Sudbeck felt ill.[7]  On July 8, 2002, he was admitted to St. Mary's Hospital in Pierre, South Dakota, and was transferred to McKennan Hospital in Sioux Falls, South Dakota, on July 10, 2002.[8]  Mr. Sudbeck was ultimately diagnosed with Legionnaires' Disease.[9]  In their Complaint, plaintiffs allege that Sunstone was negligent, thereby causing Mr. Sudbeck to be exposed to the *Legionella Pneumophilla* bacteria (Legionnaires' Disease) during his stay at the San Marcos Resort.

## IV.  STANDARD OF REVIEW – SUMMARY JUDGMENT

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the moving party is entitled to judgment in its favor as a matter of law.[10]  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for

---

[2] Docket 57, Sunstone's Statement of Facts (hereinafter "SSOF"), ¶ 2.

[3] *Id.*

[4] SSOF, ¶ 3.

[5] *Id.*

[6] SSOF, ¶ 4.

[7] SSOF, ¶ 5.

[8] SSOF, ¶ 6.

[9] SSOF, ¶ 1.

[10] FED. R. CIV. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

summary judgment."[11]  In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.[12]  The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a fact-finder to resolve the parties' differing versions of the truth at trial.  There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[13]

## V.  DISCUSSION

**A.  Motion at Docket 58**.

Sunstone seeks to exclude the expert testimony of Matthew Freije on two bases: (1) failure to make a proper disclosure under FED. R. CIV. P. 26(a)(2);[14] and (2) that the witness is not qualified to testify to the matters on which his testimony is offered by

---

[11] *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986).

[12] FED. R. CIV. P. 56(e); *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002).

[13] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[14]

**(2) Disclosure of Expert Testimony**.

**(A)** In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

**(B)** Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Sudbeck.  The problem stems from the fact that until December 2005 all of the disclosures and discovery related to Freije took place in the *Sapiro* litigation, not this case.

If Sudbeck did not make proper disclosure under Rule 26(a)(2), the Court may exclude his testimony under FED. R. CIV. P. 37(c)(1).[15/]  However, although generally within the broad discretion of the court, exclusion of testimony is an extreme sanction,

---

[15/] FED R. CIV. P. 37(c)(1) provides:

**(c) Failure to Disclose; False or Misleading Disclosure; Refusal to Admit**.

(1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

FED. R. CIV. P. 37(b) provides in relevant part:

(b) Failure To Comply With Order.

* * * *

(2) Sanctions by Court in Which Action Is Pending. If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

which should only be imposed if the party seeking exclusion has suffered some prejudice.[16]  The motion turns on what did counsel for Sunstone know concerning Freije's opinion regarding issues relevant to this case and when did he know it?

The record shows that the first indication counsel for Sunstone had of Freije's opinion regarding the specific facts of *this case* was in December 2005 in the declaration submitted in the *Sapiro* case in support of the motion to consolidate the cases.[17]  Although disclosed on the final witness list (without designation as an expert witness) filed December 1, 2005,[18] Freije was first disclosed as an *expert* witness in this case on January 24, 2006.[19]  The Scheduling and Planning Order[20] set the close of all discovery, **to be completed**, not later than January 27, 2006.[21]  Placing in the mail three days before the close of discovery information that is required to be disclosed under Rule 26(a)(2) is simply untimely and inexcusable. [22]  Moreover, as Sunstone asserts, it is highly questionable that the untimely January 24 disclosure, ostensibly in compliance with Rule 26(a)(2), complied with the requirements of that rule.  It is clear that, with respect to Freije, Sudbeck has failed to comply with both the Federal Rules of Civil Procedure and the Scheduling and Planning Order.

The Court is, however, reluctant to impose the ultimate sanction of exclusion to the extent there has been no prejudice.  Because counsel for Sunstone is also counsel for Sunstone in the *Sapiro* case and had full knowledge of Freije and his expected

---

[16] *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002).

[17] Docket 58, Defendants' Motion *in Limine* No. 1 To Exclude Matthew Freije, Exh. B.

[18] Docket 53.

[19] Docket 58, Defendants' Motion *in Limine* No. 1 To Exclude Matthew Freije, Exh. A; Docket 66, Plaintiff Response to Defendant's [*sic*] Motion *in Limine* No. 1, Exh. 17.

[20] Docket 10.

[21] Freije was not deposed in this case; the deposition of Freije was taken in the *Sapiro* case prior to December 2005.

[22] The Court notes that Sudbeck knew, or should have known, that it was intended to call Freije as a witness long before that fact was disclosed to Sunstone.  While Sunstone may have surmised that it was more likely than not that Sudbeck intended to call Freije as a witness in this case, the rules do require one party to guess what expert witnesses the other side intends to call; they require disclosure by the party intending to call the expert as a witness.

testimony with respect to the issues in that case that are common to the issues in this case, Sunstone has suffered no prejudice. Beyond that aspect of Freije's testimony, however, there is sufficient prejudice to warrant exclusion.

Sunstone also challenges the "expertise" of Freije. Admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Sudbeck offers the following "testimony" of Freije in this case:[23]

4.    Gilbert Sudbeck was exposed to *Legionella* bacteria during his June 2002 stay at the San Marcos Resort in Arizona.

5.    Significant levels of *Legionella* bacteria were found in water samples collected at the San Marcos in May and August 2003. Based on the nature of *Legionella* bacteria in plumbing systems, it is very likely that *Legionella* bacteria had been in the San Marcos domestic water system for several months or years prior to May 2003. Without evidence that a specific incident introduced *Legionella* bacteria into the system between June 2002 and May 2003, or that the system was free of detectable *Legionella* bacteria prior to June 2002, my opinion with reasonable scientific probability, based on studies of *Legionella* and biofilms, and my knowledge of and experience with domestic water disinfection, is that the *Legionella*-contaminated biofilm within the San Marcos domestic water system in May 2003 existed also in June 2002.

6.    Gilbert Sudbeck would not have been exposed to high levels of *Legionella* bacteria during his stay at the San Marcos if Sunstone had routinely tested the hotel water systems for *Legionella* and taken appropriate steps in response to the results.

7.    Sunstone failed to exercise reasonable care to prevent Legionnaires' Disease at the San Marcos. Guidelines for preventing

---

[23] Docket 73, Response to Defendants' Statement of Facts and Facts and Facts Supporting Plaintiffs' Cross-Motion for Summary Judgment, Exh. 2, Declaration of Matthew Freije filed in *Sapiro v. Sunstone*, Case 2:03-cv-01555-SRB.

the disease, including Sunstone's in-house manual, were available prior to June 2002.

When expert testimony is offered, the trial judge serves as "gatekeeper" to ensure that it meets the requirements of Rule 702,[24] including determining admissibility with respect to a motion for summary judgment.[25]  The party offering opinion testimony must prove the witness is qualified to testify and that the testimony is admissible by a preponderance of evidence.[26]  The trial judge has wide discretion in determining whether to admit or exclude the testimony.[27]

Freije, a mechanical engineer, has an extensive background in the subject of the control of *Legionella*.  His background is extensively set forth in the various documents filed in connection with the motion at bar and is merely summarized here.  Freije's *curriculum vitae* shows that he studied heating, ventilating, air-conditioning and refrigeration, and obtained a Bachelor's Degree in Mechanical Engineering from Purdue University in 1983.[28]  It also shows that he has written and spoken extensively on the subject of *Legionella* and waterborne pathogens, particularly the methodology to prevent and control *Legionella*, extending back nearly a decade.  Freije is not an epidemiologist, immunologist, microbiologist, or virologist.[29]  His knowledge of the pathology of *Legionella* is based solely upon reading of other's documentation.[30]  Neither his *curriculum vitae* nor his deposition testimony show any specialized training or education in the fields of epidemiology, immunology, microbiology, or virology.

---

[24] *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147–148 (1999); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993).

[25] *See General Electric Co. v. Joiner*, 522 U.S. 136 (1997).

[26] FED. R. EVID. 104; *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

[27] *United States v. Murillo*, 255 F.3d 1169, 1178 (9th Cir. 2001); *see also Joiner*, 522 U.S. at 142–43.

[28] Docket 58, Exh. C.

[29] *Id.*, Exh E. (Freije Deposition, September 16, 2005), pp.171:19–172:1.

[30] *Id.*, p.172:8–10

Freije is obviously qualified to testify as an expert in his field—mechanical engineering.  He is also obviously qualified to testify as to the appropriate measures to be undertaken to control *Legionella*.  Freije is not, however, qualified to testify to the pathological characteristics of *Legionella*.  There is nothing in the record that indicates that Freije has any training, education or experience that would qualify him as an expert in that area.  While significant latitude is given with respect to facts or data upon which an expert may base an opinion and they need not be testified to,[31] in this case Sudbeck attempts to qualify Freije as an expert in a field unrelated to his actual area of expertise based upon his reading of other's documents.  In particular, Freije is not qualified to testify as to the presence (or absence) of *Legionella* in the San Marcos Resort water supply in June 2002.  Freije's area of expertise and, therefore, his testimony, is limited to the appropriate methods for controlling, preventing, or remediation of *Legionella* infestations to the extent they may be relevant to the issues presented in this case.

With respect to the motions at bar, only the first sentence of paragraph 5 falls within the scope of the permitted testimony to the extent it may otherwise be relevant. However, as discussed in the next section, even that evidence likely is inadmissible. The motion at docket 58 probably should be granted.

---

[31] FED. R. EVID. 703, 705.

**B.  Motion at Docket 60**.

Freije collected water samples from 16 locations at the resort on May 13 and 14, 2003.  The samples were received at the Special Pathogens Laboratory at the VA Medical Center in Pittsburgh, Pennsylvania, on May 15, 2003.  Of the 16 samples which were analyzed, nine were negative for the presences of the *Legionella* bacteria and seven were positive.[32/]  With one exception, all of the samples which tested positive were from the hot water system.  The exception was a sample taken from an ice-making machine.  Mr. Sudbeck's testimony with respect to how he contracted Legionnaires' Disease was:  "Exposure was believed to be through the air conditioning units, air-handling units, and/or the misting system which was engaged during his stay or other ventilation systems at the hotel."[33/]  No other evidence concerning the source of Mr. Sudbeck's infection has been proffered by Sudbeck.  None of the samples–whether testing positive or negative–was taken from the air conditioning units, air handling units or ventilation systems at the resort.[34/]

Sunstone moved to exclude the evidence of the May 2003 testing that showed the presence of *Legionella* bacteria in some parts of the San Marcos Resort water system.  Sunstone argues that the sampling is too remote in time and involved water sources other than the source alleged by Mr. Sudbeck to be the one from which he contracted the disease.  Sunstone also argues that there is simply no way to reason backwards in time to determine what, if any, concentration of *Legionella* was present in the water in the system from which Mr. Sudbeck allegedly contracted the disease during the time he stayed in the hotel.  Sunstone takes the position that the evidence is irrelevant.  Sunstone also contends that if relevant the evidence should be excluded under Rule 403.

---

[32/] Docket 60, Exh. B.

[33/] Docket 57, Defendants' Separate Statement of Facts, Exh D, Plaintiffs' Response to Defendants' Interrogatories, Response to Interrogatory No. 7; Exh. A, Deposition of Gilbert Sudbeck, 87:21–25.

[34/] One of the samples was taken from the sprinkler system, and it tested negative.

Sudbeck's opposition does not respond directly, but rather asserts that "[g]iven two poisonings, is it logical to assume that the hotel was infected with the **pathogen** before Mr. Sudbeck's exposure, as well Mr. Sapiro's?[35/]  Certainly the Plaintiff's [*sic*] expert believes this–he has given a report to that effect."  The expert upon which Sudbeck relies is Matthew Freije, whose opinion on this point is inadmissible for the reasons explained in the preceding section of this order.

It is true, as Sudbeck points out that the sampling was done closer in time to Mr. Sapiro's alleged date of infection–February 2003–than to Mr. Sudbeck's alleged date of infection–June 2002.  However, even if one could maintain that this warrants evaluating the sampling as if it had taken place in February 2003, that would still be more than seven months after Mr. Sudbeck's stay at the resort.  It may be added that the water sources allegedly infecting Mr. Sapiro differs from that which allegedly infected Mr. Sudbeck.

Sudbeck also points to the opinion of Dr. Assimacopoulos that Mr. Sudbeck "contracted Legionnaire's Disease during his attendance at a conference at the Sheraton San Marcos Golf Resort and Conference Center in Chandler, Arizona, between the dates of June 24, 2002 and June 27, 2002."[36/]  The court discusses Dr. Assimacopoulos' opinions in more detail below.  Suffice it to say here that his testimony that Mr. Sudbeck's stay at the resort fell within the incubation period for the *Legionella* bacteria is the only aspect of his opinion which is admissible.

Given that the sampling for bacteria in the San Marcos Resort water supply was done many months *after* Mr. Sudbeck stayed at the hotel, that the samples were drawn from sources other than the one claimed by Sudbeck to be the source, and the utter lack of evidence showing how anyone could extrapolate backwards in time to show that the bacteria was present in June of 2002, the court is constrained to conclude that the

---

[35/] Mr. Sapiro stayed at the hotel in February of 2003.  It appears that Mr. Sapiro claims to have contracted Legionnaire's disease from the domestic hot water system; presumably that is why Freije, who was retained by plaintiff in the *Sapiro* case, chose to draw most of his water samples from that system.

[36/] Docket 73, Exh. 10, Declaration of Aris Assimacopoulos.

May 2003 testing is irrelevant.  Putting the May 2003 test results in evidence does not make it more likely that the bacteria was present in the system which allegedly infected Mr. Sudbeck in June 2002.  Thus, the evidence is irrelevant under Rule 401 and inadmissable under Rule 402.

The motion *in limine* to exclude the water tests at docket 60 probably should be granted.

## C.  Motion at Docket 77.

Sunstone objects to parts of Sudbeck's statement of facts on the basis that they are not supported by references to the specific portion of the record where the fact may be found as required by L.R. CIV. 56.1(a).  Statements of counsel, whether in legal memoranda or elsewhere, are not evidence and may not be relied on to either support or defeat a motion for summary judgment.[37]  In ruling on the motion and cross-motion, the court will do so on the basis of competent evidence in the record to which its attention is invited by the parties.[38]  The Court would not in any event grant or deny summary judgment based upon mere "statements of fact" made by counsel.  With that by way of explanation, the motion at docket 77 should be denied as moot.

## D.  Summary Judgment Motions at Dockets 56 and 73.

In its motion for summary judgment, Sunstone has placed at issue (1) whether Sunstone owed a duty to Sudbeck, its "invitee," to discover the existence of *Legionella Pneumophilla* and, thus, prevent his contraction of Legionnaires' Disease; and (2) whether, assuming Sunstone was negligent, that its negligence proximately caused Mr. Sudbeck's illness.  Sudbeck's cross-motion for summary judgment raises the issue of whether the undisputed facts establish that the negligence of Sunstone caused Mr. Sudbeck to contract Legionnaires' Disease and incur medical expenses of $97,000.

---

[37] *See Smith v. Mack Trucks*, 505 F.2d 1248, 1249 (9th Cir. 1974) (*per curium*).

[38] The Court notes that the purpose of L.R. CIV. 56.1 is to provide a direct reference for the court and opposing party to where in the record the supporting evidence may be found.  The party moving for (or opposing) summary judgment should not expect the Court to mine the record to ascertain whether competent evidence exists to support the alleged fact; nor will this Court indulge in that exercise.

The parties agree that the liability, if any, of Sunstone in this case is determined by reference to the law of Arizona, the place where the alleged tortious conduct occurred.  When interpreting state law, this court is bound by the decisions of the state's highest court.  In the absence of a decision by the highest state court, this court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."[39/]

Sunstone argues that the duty of care it owed Sudbeck did not include a duty to discover the presence of *Legionella*.  It is undisputed that Sudbeck was an "invitee."  It is also undisputed that Sudbeck was a paying guest at the San Marcos Resort.  Under these circumstances, Sudbeck was a "business invitee," *i.e.*, "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."[40/]  Under Arizona law, a business owner has a duty to maintain its premises in a reasonably safe manner, which entails a reasonable inspection to discover dangerous conditions.[41/]  Thus, as a matter of law, Sunstone had a duty to conduct a "reasonable inspection" to protect its guests, including Mr. Sudbeck, from dangerous conditions on the premises.  It does not appear that Sunstone disputes that the presence of *Legionella Pneumophilla* bacteria presents a dangerous condition.

The Arizona Supreme Court has laid out the following rule:[42/]

> To establish a proprietor's liability for injuries arising from a dangerous condition of the premises, an invitee must prove either that the dangerous condition was caused or permitted to develop by persons for whom the proprietor was responsible or that the proprietor had actual or constructive knowledge of its existence. Notice is proven constructively by

---

[39/] *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001); *Paulman v. Gateway Ventures Partners III L.P.* (*In re Filtercorp, Inc.*), 163 F.3d 570, 578 (9th Cir. 1998).

[40/] *Nicoletti v. Westcor, Inc.,* 639 P.2d 330, 333 (Ariz. 1982), *quoting* Restatement (Second) of Torts § 332 (1965).

[41/] *McDonald v. Smitty's Super Valu, Inc.*, 757 P.2d 120, 122 (Ariz. 1998).

[42/] *Id.*

establishing that the condition existed long enough that, in the exercise of ordinary care, the defendant should have discovered and corrected it.

It is undisputed that the first time Sunstone knew that the San Marcos Resort may have been a source of *Legionella* was some time in February 2003, which is well after Mr. Sapiro contracted the illness.[43/]  Consequently, the issue turns on the question of whether Sunstone owed a duty to test for *Legionella* or the extent of the appropriate steps it should have taken to prevent an outbreak of Legionnaires' Disease in the absence of any indication it was present.

Sunstone correctly argues that, in the absence of a suspicion that *Legionella* exists, there is no law or regulation that compels a hotel operator to periodically test for *Legionella* or take other steps to prevent a guest from contracting Legionnaires' Disease.  Moreover, Sunstone argues, there is no industry standard that requires periodic testing or testing at all in the absence of a suspicion that *Legionella* is present. Therefore, Sunstone argues it had no duty to test or take other prophylactic measures. However, as Sudbeck argues, Sunstone's Engineering Standard Operating Procedures themselves provide:[44/]

LEGIONNAIRE'S DISEASE

Follow these checks to help prevent the spread of Legionella:

◆ Prevent accumulation of mud, silt, debris, etc from sump basins of cooling towers by cleaning on a regular basis.

◆ Have water treatment supplier perform litmus dip cell tests as recommended.

◆ Consider installation of chlorine and/or bromine feeders.

◆ Consider installation of sun screen on open top towers to prevent algae growth on distribution deck.

◆ On evaporative condensers, filters should be cleaned on a regular basis and makeup water should be chemically treated as indicated above.

◆ Drain down all storage tanks on a regular basis.

---

[43/] SSOF, ¶ 17.

[44/] Docket 73, Exh. 2, Excerpt of Sunstone Engineering Standard Operating Procedures.

14

◆  Ensure discharge air from cooling towers or evaporative condensers is not drawn into any outside air intakes on air handlers or heating/ventilating unit.

◆ Check that duct work or other HVAC components do not have standing water.

◆  Evaluate any circumstance of standing water or moisture where the temperature could be between 85°F and 130°F and resolve.

It appears to be undisputed that these procedures were not followed.  Viewing this evidence in the light most favorable to Sudbeck, as the Court must, a reasonable trier of fact could find that Sunstone had itself established the requisite standard of care and in failing to follow its own internally established procedures had not exercised due care.[45/]  There is, therefore, a triable issue of fact as to whether Sunstone breached its duty of care to Sudbeck.  The question of whether, assuming a breach of that duty, there was a causal connection between the failure of Sunstone to follow its internal operating instructions and Mr. Sudbeck's contraction of Legionnaires' Disease, upon which the outcome of this case turns, is discussed below.

Sudbeck, in opposing Sunstone's motion and in the cross-motion, relies on the opinions of two experts to establish causation as a matter of law: Dr. Assimacopoulos and Matthew Freije.  As explained above, the testimony of Freije on this point is inadmissible.  Thus, the issue turns on the opinion of Dr. Assimacopoulos, who opines:[46/]

> 3.  With a reasonable degree of medical certainty as a medical professional and specialist in the area of infectious disease, it is my opinion that Mr. Gilbert Sudbeck was exposed to Legionella Pneumophilla bacteria and contracted Legionnaire's Disease during his attendance at a conference at the Sheraton San Marcos Golf Resort and Conference Center in Chandler, Arizona between the dates of June 24, 2002 and June 27, 2002.  This opinion is based on the incubation period of the Legionella Pneumophilla bacteria and the onset of Mr. Gilbert Sudbeck's symptoms.

---

[45/] *See Austin v. City of Scottsdale*, 684 P.2d 151, 154 (Ariz. 1994); *Peacock v. Samaritan Health Services*, 765 P.2d 525, 529 (Ariz. App. 1998).

[46/] Docket 73, Exh. 10, Declaration of Aris Assimacopoulos.

15

Sunstone objects to the opinion on various grounds, but most particularly that it does not adequately set forth the basis for the opinion.  Sudbeck counters, quite correctly, that the declaration sets forth in detail those materials on which Dr. Assimacopoulos based his opinion.  Unfortunately, however, it does not set forth the *factual basis* upon which he rests his opinion other than the incubation period of the *Legionella* bacteria.  Consequently, the declaration is insufficient to support summary judgment in favor of Sudbeck.[47]  While Dr. Assimacopoulos may be qualified to testify that he treated Mr. Sudbeck for Legionnaires' Disease and the incubation period for the onset of that disease, his opinion as to where the disease was contracted is dependent upon evidence that necessarily must come from someone other than Dr. Assimacopoulos, who has no knowledge of the location.  Yet, there is no evidence to establish that *Legionella* bacteria was present at the San Marcos Resort at the time Mr. Sudbeck was a guest.

The evidence before this court establishes that Sudbeck: (1) contracted Legionnaires' Disease sometime prior to July 8, 2002 (the date he was hospitalized); (2) he stayed at the San Marcos Resort between June 25 and 27, 2002; and (3) the time between his stay at the San Marcos Resort and the onset of his symptoms were within the incubation period of the *Legionella Pneumophilla* bacteria.  What the evidence does not establish is where he contracted the infection.  Even if the May 2003 test results were admissible in evidence, it would be sheer speculation to say that it is more likely than not that the bacteria was present at the resort in June 2002 when Mr. Sudbeck was a guest.

In summary, it appears to the court that the undisputed facts show that Sudbeck cannot prove it was more likely than not that he contracted Legionnaires' Disease as a result of staying at the resort.  It follows that Sunstone's motion at docket 56 probably should be granted and that Sudbeck's motion for summary judgment at docket 73 probably should be denied.

---

[47] *See Guidroz-Brault v. Missouri Pac. R.*, 254 F.3d 825, 831 (9th Cir. 2001).

## VI.  TENTATIVE CONCLUSION

Based on the foregoing and subject to hearing oral argument, the court tentatively concludes that the motions should be decided as follows:  1) Sunstone's Motion for Summary Judgment at docket 56 should be granted; 2) Sudbeck's Cross-Motion for Partial Summary Judgment at docket 73 should be denied; 3) Sunstone's Motion *in Limine* to Exclude Matthew Freije's Testimony at docket 58 should be granted; 4) Sunstone's Motion *in Limine* to exclude water test results at docket 60 should be granted; 5) Sunstone's Motion to Strike Portions of Plaintiffs' Statement of Facts at docket 77 should be denied as moot; and 6) Sunstone's Motions *in Limine* at dockets 59, 61, 62, 63, and 64 should be denied as moot.

DATED at Anchorage, Alaska, this 26th day of July 2006.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT COURT JUDGE